Filed 9/24/15  P. v. Billoups CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>LEO EDDIE BILLOUPS, JR.,<br><br>      Defendant and Appellant. | C075651<br><br>(Super. Ct. No. 13F01847) |

In a well-worn domestic violence scenario, the victim, Felicia Doe, called the police after she was beaten by her boyfriend, then later recanted and claimed her injuries were accidental.  She claimed she had been so drunk the night of the incident that she could not remember what she told the police.  The jury nevertheless convicted defendant after hearing Doe's 911 call and the testimony of the police officer and social worker Doe spoke with after the incident.

When Doe was taken to the hospital, she had a blood-alcohol test performed, which showed a level of .24.  Upon the objection of the prosecution, the trial court

1

excluded testimony of the alcohol test without an expert to testify as to the meaning of the results. Defendant's arguments on appeal all relate to the exclusion of this evidence. Defendant claims: (1) the prosecutor committed misconduct by arguing Doe was not drunk, (2) the trial court denied him a fair trial by excluding the evidence, and (3) his trial counsel rendered ineffective assistance by not putting an expert on the stand to testify about the test.

The jury convicted defendant Leo Eddie Billoups, Jr., of corporal injury on a cohabitant and mayhem, and found true an allegation that he personally inflicted great bodily injury upon Felicia Doe under circumstances involving domestic violence. The trial court sentenced defendant to the upper term of four years for the corporal injury on a cohabitant, and five years for the enhancement, for a total of nine years in prison.

We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Doe's neighbor called 911 to report that Doe was at her house, was "all beat up," and needed the police. Doe got on the phone, and when asked by the operator what had happened, replied, "Oh my man fucken beat me up . . . ." The operator asked what kind of car he was driving, and Doe replied that it was a gray BMW. Doe told the operator that the man's name was Eddie Leo Billoups, and correctly spelled the last name for the operator. When asked where defendant had gone, Doe replied, "I don't know what fucken direction he went in. Fucken I'm beat up I can't even see shit . . . ." Doe gave defendant's age, race, birth date, and height, and said he was of medium build. She told the operator he was wearing a white tee shirt, but that it was likely covered in blood. She then gave her address before hanging up.

Police Officer Jake Hensley responded to the call. Doe appeared agitated and in shock, but he did not recall that she appeared intoxicated, and he would have noted it in his report if she had appeared intoxicated. Both of Doe's eyes were red, and her left eye was bleeding and nearly swollen shut.

2

Doe told Hensley that she had been packing her bags in preparation of leaving defendant when he had come home. He had been smoking crack, and an argument ensued when he saw she had been packing. She said he grabbed her cell phone, and stomped on it. He struck her in the face with his fists at least 10 times.

Officer Hensley noticed blood splatters scattered all throughout the main and front living room of the residence. There was a broken mirror, and shards of glass were all over the floor.

Doe was seen by a specialist in glaucoma surgery at the emergency room. He testified that Doe's left eye was ruptured, and the internal part of the eye was on her face. There was a fracture of the bottom part of the skull below the eye. The iris was necrotic and had to be removed.

Rebecca Mercado, a medical social worker, interviewed Doe at the hospital approximately 11 hours after Officer Hensley responded to the call. Doe told Mercado that she had a history of domestic violence with defendant, and that the violence occurred when he was intoxicated. Doe appeared alert. She said that if she decided to go back home, she would change the locks on the door and have a family member stay with her.

Police officer Patricia Varozza arrested defendant. Defendant told Varozza that Doe was an alcoholic and a mean drunk. Defendant said they had gotten into an argument, that he had slapped her once or twice, and that she had thrown a mirror at him. He denied punching Doe.

Doe's testimony at trial was vastly different from her statements immediately after the incident. Since the incident, she and defendant had become engaged. She testified she had never seen defendant under the influence of a controlled substance. She said that when defendant came home the night of the incident, she had consumed one and a half bottles of vodka, and was angry because defendant would not go to the Bay Area with her. The mirror broke when she threw it at him. She sustained her injuries when she slipped and fell. She was face down on the floor, and when she got up she saw blood

3

coming down her shirt. Defendant was not at home when she got up. She went to her neighbor's house because she wanted the neighbor to take her to defendant's cousin's house.

She denied ever calling 911. When the 911 recording was played in court she said she had no recollection of making the call. She admitted that she sounded angry on the recording, but that she had not been slurring her words, and that she had been clear and accurate as to all the information she had given the operator.

Doe testified defendant had done nothing to injure her, and that he had not even been at the house when she was injured. She explained away her contemporaneous statements as the result of her being angry, injured, and having an alcohol level that was three times the limit. Doe claimed defendant had never told her to avoid being subpoenaed, but that a prior defense attorney had given them such advice.

The prosecution played several recorded telephone conversations between Doe and defendant while he was in jail. In one conversation, defendant warned Doe about going to the house, and told her to be careful. Doe told him that she had to get the mail and that when she went she would "sneak around . . . ." In another conversation, Doe indicated she had been subpoenaed for trial. Doe asked defendant what he wanted her to do. He replied, "Well. You don't remember anything. You were intoxicated . . . . [¶] . . . [¶] That . . . it was a lie. Everything. You know what I mean?" Doe asked defendant if he wanted her to remain silent. He said, "I would just say that ah, that you know, . . . I would just go with I didn't do it. That he didn't do anything. Whatever. It wasn't like that. Or just, uh or just remain silent . . . I don't know on that one." Defendant told Doe to get a notarized statement "saying that it was all a bunch of lies. That ah, that never happened. . . . And that you've been trying to, uh you know, tryin to tell the Courts or whoever, the District Attorney the whole time that's this is not what happened. . . .That you were so drunk that you swung a mirror and fell and hit your face on the coffee table. You know what I'm saying? You know you gotta make it, make it

4

like that, you know what I'm saying?" He told her to "say I was so drunk I don't remember that night. But I know one thing he would never do anything like that to me, or something like that."

Defendant testified at trial. He said Doe had "problems with alcohol." He testified that on the night in question he arrived home between 10:00 and 10:30, after being at his grandfather's all day. Doe was drunk. She came at him with a mirror, and he reacted by hitting the glass and cracking it. He tried to slap the mirror out of her hand and push her out of the way. However, he never punched Doe in the face. He knocked her and the mirror into the couch, grabbed his phone, and left. When he left, Doe was not injured, her eye was not bleeding, and she was not cut or bruised.

DISCUSSION

I

Prosecutorial Misconduct

Defendant claims the prosecutor argued Doe was sober the night of the incident, even though he knew it to be untrue, and that such argument was prejudicial misconduct.

A. Background

On cross-examination, Doe admitted she had consumed one and one-half, 750 milliliter bottles of vodka the night of the incident. Defense counsel asked, "So it's fair to say you were quite drunk?" She responded, "Apparently[,] .24 is astounding." Defense counsel went on, "[w]e [are] going to get to the .24." As part of the defense case, Doe testified she had gastric bypass surgery in 2006. She testified that before the surgery, she "could pretty much drink like a sailor, and after the surgery . . . I could feel the [e]ffects of it from the first sip of drinking." The result, she testified, was that that she would not remember how she got home, or which route she took to get home, or sometimes there would be people in her bed that she did not remember being there.

Outside the presence of the jury, the prosecutor objected to any further reference to Doe's blood-alcohol level being .24. His concern was that the blood-alcohol level

5

from the medical records might not translate to the measure used for a driving under the influence type of situation, and an expert would be needed to make the conversion. Defense counsel responded that he intended to have the glaucoma specialist authenticate the blood-alcohol findings.

When defense counsel cross-examined the glaucoma specialist, he asked whether the doctor was aware of gastric bypass surgery. The prosecutor objected that the question was beyond the scope of direct. The objection was ultimately sustained because the question exceeded the scope of direct examination, had little relevance, and exceeded the scope of the expert's expertise.

Outside the presence of the jury, defense counsel again brought up Doe's blood-alcohol test, which had been given to her at the hospital. Defense counsel indicated Dr. Grecu, who authored the report and was on the prosecution's witness list, would be able to clarify it. However, defense counsel later informed the court that Dr. Grecu had never been subpoenaed, and that when contacted she indicated her attending physician would be the proper person to subpoena.

Defendant also tried to get the results of the blood-alcohol test admitted as evidence by qualifying Felicia Doe as an expert. Doe had a degree in nursing, but had never worked as a nurse. Defense counsel represented that he would have Doe testify regarding her urinalysis report that set forth her blood-alcohol content. The trial court stated that it was "not satisfied looking at this curriculum vitae that it qualifies [Doe] to do anything." The prosecutor objected to Doe as an expert witness, and indicted he would call a criminalist from his office in rebuttal. The court indicated it would consider allowing Doe to testify as an expert, but said, "It's very odd to have a domestic violence victim who's recanting also present medical testimony about her own medical records."

No doctor or expert, including Doe, ever gave testimony about Doe's blood-alcohol test.

During closing, the prosecutor made the following argument:

6

"Think about how much time [defense counsel] and the Defense spent on proving to you that she [(Doe)] was drunk; there's bottles of vodka, she drank a bottle-and-a-half, discussing her past alcohol history, all that stuff. And it's all to say that her ability to remember on that evening was so compromised that you can't take anything that she said or did that evening as credible.

"And that's absolutely not true, and that's not true because you have the 911 call to listen to. You have the 911 call where her speech isn't slurred. She admitted no, it's not slurred.

"She admitted to you that she gets the defendant's birthday right. She gets his height right. She gets what he's wearing right. She gets the type of car he drives, the color of the car, where she is. All of that stuff is absolutely right. [¶] . . . [¶]

". . . At the hospital she's able to give the hospital staff valid information that's true and correct such as I'm Baptist, this is where I live, this is my friend, Marlo, all things that point out that she absolutely is not drunk or not able to function."

Defense counsel raised Doe's drunken state repeatedly throughout his argument.

In response, the prosecutor argued:

"Now, [defense counsel] also says well, the evidence is uncontroverted. [The prosecutor] has to agree that Ms. Doe was drunk that night.

"No, I don't.

"The only evidence that you have before you that she was drunk, that she was falling-over intoxicated is her own statements, is [defendant's] statements.

"In fact, [defendant] said I noticed that she had been drinking. He didn't say she did anything besides point a mirror at him.

"He didn't say she was falling over. He didn't say she was slurring her words. He didn't say any of that.

"But Officer Hensley . . . says I've been an officer for years. I'm trained in taking DUI reports. I'm trained in testing about whether or not people are under the influence when they're driving.

7

"He told you I didn't see anything that led me to believe that she was drunk. She wasn't slurring her words, no objective signs of intoxication.

"That's his job. That's something that he does on a regular basis, and this man doesn't see anything that leads him to believe that she's blacked out or drunk."

B. Forfeiture

Defendant now claims the prosecutor committed misconduct because he knew Doe was not sober, he kept this important information from the jury, and argued to the jury that Doe was sober. Defendant did not object to the prosecutor's argument below. A defendant may not complain of prosecutorial conduct on appeal unless he made an assignment of misconduct below on the same ground and requested the jury be admonished. (*People v. Huggins* (2006) 38 Cal.4th 175, 205.)

Citing *People v. Hill* (1998) 17 Cal.4th 800, 820, defendant argues this case presents an exception to the rule of forfeiture, because there was no admonition that could have cured the harm. However, *People v. Hill* concluded an objection based on prosecutorial misconduct would have been futile because defense counsel made repeated objections on that ground, but was overruled. (*Id.* at pp. 820-821.) Defendant points to no prior similar objections made by his trial counsel that the trial court overruled.

Defendant argues, "[t]he prosecutor asked the jury to infer Doe's sobriety from facts that were in the record. Because of the prosecutor's efforts, the medical testimony to the contrary was not part of the record." The sole thrust of the defense was that Doe was so drunk she did not know what she was saying to the 911 operator or the police officer. Defendant cannot reasonably claim that the prosecutor committed misconduct when he argued against this pillar of the defendant's case, based on facts that were in the record. Moreover, the prosecutor did not prevent the test results from being introduced. Had defendant introduced the results with the proper expert to interpret the numerical results, the trial court indicated its willingness to admit the test results. In any event, the argument is now forfeited.

## II

### Evidence Code 352

Defendant argues the trial court erred by excluding the testimony of Dr. Rabowsky, the glaucoma specialist, on the grounds the probative value of the evidence would be substantially outweighed by the probability its admission would necessitate undue consumption of time. (Evid. Code, § 352.) Defendant argues this denied his Fifth and Fourteenth Amendment rights to due process and his Sixth Amendment right to present a defense. We disagree.

The prosecution called Dr. Rabowsky, a glaucoma specialist, because he performed surgery on Doe's eye and could testify to the injuries she sustained. On cross-examination, defense counsel asked if Dr. Rabowsky were aware of gastric bypass surgery. The prosecutor objected that the question was beyond the scope of direct. After some discussion at the bench the objection was sustained and the question stricken.

Later, outside the presence of the jury, defense counsel argued a person who had undergone gastric bypass surgery would absorb alcohol faster, getting drunker off of less alcohol. The prosecutor continued to argue that the question was outside the scope of direct, and also argued that if defendant intended to present scientific evidence regarding gastric bypass surgery, the People would be entitled to a continuance to be able to respond.

The court stated, "I'm ruling on this issue that you asked a specialist in glaucoma surgery about gastric bypass surgery . . . which far exceeds the scope of direct examination. . . . [¶] . . . [¶] . . . [A]nd the relevance to this, because I have to tell you. I'm looking at . . . Section 352 of the Evidence Code. [¶] And for all I know, this could take us an hour, two hours off on . . . a tangent. . . That is an undue consumption of time on an issue that I think has extremely minuscule probative value . . . . [¶] . . . [¶] But if you want to present somebody in your case in chief, you can do that I suppose, although I'm really having trouble under 352 seeing why that wouldn't be an undue consumption

9

of time and something that would confuse the jury. [¶] But it doesn't work to have a glaucoma surgical specialist being cross-examined on something that I find is extremely tangential to the evidence in this case or the issues in this case. [¶] And putting that aside, it far exceeds the scope of direct examination. It has nothing to do with what the direct examination was about."

Defendant conceded at oral argument that trial counsel never made an offer of proof as to what Dr. Rabowsky would have said about the effect of gastric bypass surgery on a person's absorption of alcohol. Cross-examination is limited to the scope of direct examination. (Evid. Code, § 773.) "If the evidence the defendant seeks to elicit on cross-examination is not within the scope of the direct examination, an offer of proof is required to preserve the issue." (*People v. Foss* (2007) 155 Cal.App.4th 113, 127.) Without an offer of proof, this court cannot know what the nature of the evidence was that the trial court refused to admit, thus cannot know whether any error was made. Accordingly, this issue has not been preserved for appeal.

Even if defendant had preserved the issue for appeal, we would not find reversible error. Defendant never attempted to call his own expert on gastric bypass surgery. Nevertheless, he now argues the trial court denied him the right to a defense. He is incorrect. The trial court indicated he could call his own expert to testify in his case in chief. The trial court acted within its discretion in rejecting defendant's attempt to question a glaucoma specialist called by the prosecution on a matter that was not within his expertise and was not within the scope of direct questioning. (*People v. Lynn* (1971) 16 Cal.App.3d 259, 271.) The trial court's Evidence Code section 352 ruling was specifically directed to the attempt to raise those questions to that witness. Defendant could have brought in his own expert to elicit the evidence he desired, and the court indicated it would have allowed it. Thus, the court's ruling did not prevent defendant from presenting a defense.

10

Effective Assistance of Counsel

Defendant argues his trial counsel rendered ineffective assistance of counsel by not asking the prosecution's glaucoma expert to authenticate the blood-alcohol test performed on Doe at the hospital, and by not ensuring that another doctor at the hospital would be able to testify.

"To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Scott* (1997) 15 Cal.4th 1188, 1211.) Although a defendant has the burden of showing both deficient representation and resulting prejudice, we may properly dispose of defendant's claim on the ground of lack of sufficient prejudice, without making a determination as to whether counsel's performance was below an objective standard of reasonableness. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674, 699].) We conclude there was no prejudice here because there is no reasonable probability that the result would have been more favorable to the defendant had trial counsel elicited the evidence in question.

No matter how Doe's blood-alcohol test was interpreted, the real question was whether Doe was so drunk she was unaware of what she was doing or saying the night of the incident. The jury heard sufficient evidence on both sides to make its determination. In favor of the defense, the jury heard evidence from both Doe and defendant that Doe drank an excessive amount the night of the incident. Additionally, Doe's daughter testified that her mother was an alcoholic. Doe testified she had gastric bypass surgery in 2006, and that she felt the effects of alcohol more quickly after the surgery.

Even assuming an expert witness had testified that Doe's blood-alcohol test indicated she would have been so impaired that she would not have known what she was

saying, the jury heard the 911 call and was able to judge for itself whether or to what extent Doe sounded intoxicated. The jury also heard the testimony of the responding police officer. The officer had no recollection that Doe appeared drunk, and the story Doe told the officer was consistent with the 911 call. It is not reasonably likely that the addition of expert testimony regarding the meaning of the blood-alcohol test would have affected the outcome.

## DISPOSITION

The judgment is affirmed.


/s/
Blease, Acting P. J.


We concur:


/s/
Robie, J.


/s/
Murray, J.

12